JOURNAL ENTRY and OPINION
{¶ 1} The court, sitting without a jury, found defendant William Powell guilty of felonious assault after throwing a brick into a tow truck in an act of "road rage." Powell's sole assignment of error is that the court's verdict was against the manifest weight of the evidence.
 {¶ 2} Powell's claim that the verdict is against the manifest weight of the evidence requires us to review the evidence to determine whether the court lost its way in arriving at its verdict. State v.Thompkins (1997), 78 Ohio St.3d 380, 387. We undertake this review with a recognition that the court was in the better position to assess the credibility of the witnesses. State v. DeHass (1967), 10 Ohio St.2d 230.
 {¶ 3} The victim was a tow truck operator who testified that a car Powell had been driving cut him off in a construction zone. The two vehicles reached a stop light, with Powell's car ahead of the victim's tow truck. Powell's passenger opened the door and gave the victim a dirty look, then said "that was some pretty stupid shit that you pulled." The victim became irritated because he believed that he had been cut-off in traffic. When the two vehicles reached the next traffic light, Powell pulled his car in front of the tow truck to block it from moving. The passenger door again opened and the passenger exited the vehicle, swearing at the victim. The passenger went to the side of the road and picked up a chunk of asphalt. The victim backed up his tow truck and pulled around Powell's parked car. As he drove away, he saw Powell's car following him, with the headlights flashing. At some point, the victim again stopped at a traffic signal and Powell's passenger approached the tow truck from the passenger side and threw a brick through the passenger side window, causing the window to shatter and striking the victim on his right arm. Before the victim could say anything, Powell approached the passenger side of the tow truck and threw a green bottle into the truck, hitting the victim in the head. The state offered into evidence photographs showing cuts that the victim suffered to his face and arm.
 {¶ 4} Two police officers who happened to be in the area testified that they witnessed the assault. One of the officers said that he heard the squealing of tires and saw Powell's car coming to a stop in front of the victim's tow truck. Powell's passenger exited the vehicle and threw a brick into the tow truck. The officer began to run to the scene and while doing so, saw Powell run to the tow truck and "as hard as he could" throw a bottle into the truck. When Powell and his passenger saw the police, they fled.
 {¶ 5} The second police officer likewise saw both Powell and his passenger exit their vehicle and throw things. This second officer related how Powell was running "full steam" towards the tow truck and struck the victim in the head with a bottle. This officer gave the passenger a long chase before realizing he left his keys in the ignition of his patrol vehicle.
 {¶ 6} Powell did not testify, but his passenger did and said that the victim had cut them off. When they stopped at a traffic light, the passenger said that he opened his door and used his index finger to indicate they were trying to "get from one lane to the other." The victim made a racially disparaging remark about them using a turn signal. When the vehicles began moving again, the victim began chasing them, swerving from lane to lane until he bumped Powell's car from behind. Powell pulled his car over at a bus stop and the victim followed. The victim exited the tow truck and went to the back of the truck as though he were hiding an object behind his back. Not knowing what the victim held behind his back, the passenger picked up a brick for his own protection. When the passenger said that he and Powell did not want any trouble, the victim said that he only wanted them to get out of his way and let him pass. The victim reentered his vehicle and drove away. A short while later, Powell and the passenger saw the victim following them. Powell had been giving the passenger a ride to a rapid transit station, and when they approached the station, the passenger exited the vehicle and began to walk. He saw the victim bearing down on him at full speed, so he threw the brick at the tow truck, hitting it on the passenger side window. The passenger took off running, but said that he had not seen any police officers before he decided to run. The victim followed the passenger in the tow truck, hitting the passenger and causing him to fall to the ground.
 {¶ 7} The court's verdict was not against the manifest weight of the evidence. The only disinterested witnesses were the police officers, whose testimony fully corroborated that of the victim. Importantly, both officers testified that they saw Powell run to the tow truck and throw the brick as hard as he could. This undercut the defense theory of self-defense because the victim, as the alleged aggressor in Powell's story, appeared to be doing nothing aggressive at the time other than sitting in his truck. At the very least, the court could doubt the veracity of a story that has Powell (as a victim) making an all-out charge to the tow truck in self-defense. Moreover, the passenger's flight from the scene could be viewed as inconsistent with a theory of self-defense in that the victim of a crime would be more likely to remain and assist the police in reporting the offense.
 {¶ 8} Powell's passenger was no help. He gave no testimony whatsoever about Powell's actions in throwing the bottle, saying that "after I threw the brick, I saw no officer, I saw nobody."
 {¶ 9} The court, having listened to the evidence was in the best position to weigh the credibility of the witnesses. Obviously, both Powell and the victim believed they had been cut-off by the other. Regardless, however, that fact alone did not justify escalating a harmless road incident into an assault. The court did not lose its way.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
KENNETH A. ROCCO, P.J., and COLLEEN CONWAY COONEY, J., CONCUR.